**Florence M. WREN, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health & Human Services, Defendant–Appellee.**

No. 90–1584

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 1, 1991.

---

Hansel Anthony Jones, Jackson, Miss., for plaintiff-appellant.

George Phillips, U.S. Atty., Jackson, Miss., Beth Henderson, Mary A. Sloan, Mack A. Davis, and Bruce R. Granger, Atlanta, Ga., for defendant-appellee.

Before JOHNSON, SMITH and WIENER, Circuit Judges.

PER CURIAM:

In this Social Security case, Plaintiff–Appellant, Florence M. Wren, appeals from the order of the district court adopting the

magistrate's report and recommendation to affirm the final decision of Defendant–Appellee (Secretary) declining Wren's request for review. Finding no reversible error in the district court's determination that the Secretary's decision was reasonable and supported by substantial evidence, we affirm.

## I.

Wren filed her applications for disability insurance benefits and Supplemental Security Income on November 10, 1987, alleging disability from October 11, 1987, as a result of a back injury sustained in an automobile accident. The applications were denied initially, and were again denied upon reconsideration. Wren then requested a hearing before an Administrative Law Judge (ALJ), which was held on October 12, 1988. The ALJ subsequently issued a decision on November 25, 1988, denying Wren's claims. On May 5, 1989, the Appeals Council declined to grant Wren's request for review.

After she timely exhausted her administrative remedies, Wren sought judicial review of the Secretary's final decision in the district court. On July 3, 1990, the magistrate recommended that Wren's complaint be dismissed. Wren filed objections to the magistrate's report and recommendation. By order dated July 18, 1990, the district court adopted the magistrate's report and recommendation and affirmed the decision of the Secretary. Wren timely appealed on July 20, 1990.

## II.

### A.  PROOF OF DISABILITY

■ In order to obtain a period of disability and disability insurance benefits, Wren bears the burden of proving that she is disabled within the meaning of the Social Security Act (the Act). *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir.1985). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

### B.  DETERMINING DISABILITY

■ The Secretary has promulgated Social Security Administration Regulation No. 16, setting forth a five-step sequential process to be used in determining whether a claimant is disabled:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings. 20 C.F.R. §§ 404.1520(b) and 416.920(b) (1989).

2.  An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. §§ 404.-1520(c) and 416.920(c) (1989).

3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors. 20 C.F.R. § 404.1520(d) and 416.920(d) (1989).

4.  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made. 20 C.F.R. § 404.1520(e) and 416.920(e) (1989).

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed. 20 C.F.R. §§ 404.1520(f) and 416.920(f) (1989).

On the first four steps of the analysis, the claimant has the initial burden of proving that she is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Secretary on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id.* "A find-

ing that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

Following the sequential steps, the ALJ found that Wren was not disabled in the fourth step of the analysis because her "impairments do not prevent [her] from performing her past relevant work." The ALJ further found that Wren

> ha[d] the residual functional capacity to perform work-related activities except for work involving lifting and carrying more than ten pounds on an occasional basis with frequent lifting and carrying of items such as docket files, ledgers, and small tools as well as standing and walking on an alternating basis throughout the workday with the claimant being able to sit the majority of the workday.

(citing 20 C.F.R. § 404.1545 and § 416.945). Moreover, the ALJ determined that "[t]he claimant's past relevant work as a seamstress did not require the performance of work-related activities precluded by the above limitation(s)." (citing 20 C.F.R. § 404.1565 and § 416.965).

## C. REVIEW OF SUBSTANTIAL EVIDENCE

The scope of review by this Court is as follows:

> In reviewing disability determinations by the Secretary, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Secretary's factual findings and whether any errors of law were made.... To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance.... We may not reweigh the evidence or substitute our judgment for that of the Secretary, but we must scrutinize the record in its entirety to ascertain whether substantial evidence does indeed support the Secretary's findings.

*Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir.1989) (citation omitted).

■ To determine whether substantial evidence of disability exists, four elements of proof must be weighted: 1) objective medical facts; 2) diagnoses and opinions of treating and examining physicians; 3) claimant's subjective evidence of pain and disability; and 4) claimant's age, education, and work history. *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972). The ALJ and the district court weighed the following:

■ 1) *Objective medical evidence.* The record contains medical evidence from five physicians and one chiropractor. The apparent treating physician was Dr. A.B. Britton, III. The examining physicians were Dr. J.S. McIlwain and Dr. Hudson. The non-examining, reviewing physicians were Dr. Louis T. Maxey and Dr. Carol K. Yarbrough. The chiropractor was Dr. L.C. Huddleston.

Wren's treating physician, Dr. Britton, examined her on March 21, 1988. Both the objective and neurological exams were normal. In order to complete a medical assessment of Wren's ability to do work-related activities, Dr. Britton took x-rays of Wren's cervical and lumbar spine which showed degenerative changes.

Dr. McIlwain examined Wren on October 11, 1987. An x-ray of the lumbar spine indicated degenerative disc disease at L5–S1 and straightening of the lumbar curve. An x-ray of the chest revealed only left thoracoplasty, otherwise negative. Finally, an x-ray of the cervical spine showed degenerative disc disease in the lower cervical spine. Dr. McIlwain prescribed the use of a heating pad, Darvocet for pain, and Robaxin for muscle spasms. Dr. McIlwain saw Wren on two other occasions for follow-up. An x-ray of her back showed some osteoarthritis at L–5 through S–1. An MRI of her back showed a disc bulging at L–5 through S–1 level, degenerative joint disease at L–4, L–5, S–1, and degenerative faucet disease.

Another examining physician, Dr. Hudson, conducted a physical examination of Wren on January 26, 1988. Palpation of the back was unremarkable. There was no

apparent localized tenderness. Straight leg raising was negative. Examinations of the wrist and legs were negative.

On October 19, 1987, Dr. Huddleston, Wren's chiropractor, conducted both an orthopedic and neurological examination which revealed hyporeflexia of the left biceps, positive foramina compression, decreased cervical extension with pain, decreased left lateral cervical flexion with pain, decreased cervical rotation with pain bilateral, positive Lewin test, positive Lewin sign, positive Kemps, decreased lumbar flexion with pain, decreased lumbar lateral flexion with pain, decreased left lumbar rotation left with pain, left high shoulder, high right pelvis, positive Soto Hall, positive Laseques right, and positive Fabere Patrick bilateral.

2) *Diagnoses and opinions.* On March 21, 1988, Dr. Britton was of the opinion that Wren was suffering from osteoarthritis. However, an objective examination and a neurological examination were normal. Moreover, Dr. Britton found that Wren could walk without assistance. In his February 7, 1989, medical assessment of Wren, Dr. Britton concluded that based on x-rays of her cervical and lumbar spine, she could lift and/or carry 2–8 pounds for ⅓ of an eight-hour workday; she could stand and/or walk one hour in an eight-hour workday in periods of 5–10 minutes without interruption; she could sit 2–3 hours for 45 minutes–1 hour without interruption; she could never balance, stoop, or crouch; and she could engage in limited pushing and pulling.

Dr. McIlwain's diagnosis was cervical strain, secondary to motor vehicle accident; rotary injury of shoulders, secondary to motor vehicle accident; lumbar strain, secondary to motor vehicle accident; and probably osteoarthritis aggravated by trauma Dr. McIlwain explained that the bulging disc at L–5 through S–1 level was not normal and certainly could cause pain. He further explained that her arthritis was probably aggravated by the trauma, and that she would probably experience pain intermittently for some time, perhaps even for the remainder of her life.

Dr. Hudson's report reveals that palpation of Wren's back was unremarkable. There was not apparent localized tenderness. Her wrist and legs were negative. He found that although Wren had no signs of fracture or dislocation, she had multiple soft tissue injuries sustained in an old motor vehicle accident. Moreover, he found her prognosis to be good.

In October 1987, Wren's chiropractor, Dr. Huddleston, found that she was experiencing nerve root impingement at the cervico-brachial and lumbosacral regions lending to a deficit in the normal neuromusculoskeletal function, which if not properly managed, could lead to probable permanent loss of use of the affected areas. In a letter dated January 9, 1988, Dr. Huddleston stated that Wren would need about four months of rest and relaxation after which, upon re-evaluation, a date of return to work would be determined. But Wren apparently never returned.

On March 14, 1988, Dr. Yarbrough, a reviewing physician, diagnosed Wren as suffering from osteoarthritis of the lumbar spine and hypertension. Dr. Yarbrough went on to say that although there was x-ray evidence of some boney changes in Wren's lower back, there was no deformity, no evidence of nerve damage, no evidence of muscle mass loss, and she was able to walk normally. Moreover, Wren's condition was not so severe as to significantly limit her ability to work.

In April 1988, Dr. Maxey, another reviewing physician, diagnosed Wren as suffering from osteoarthritis of the lumbar spine and hypertension. However, based on materials in Wren's file and evidence from Dr. Britton, Dr. Maxey opined that Wren's back condition was not severely disabling and would not limit her ability to work.

3) *Subjective evidence of pain.* At the October 12, 1988, hearing, Wren testified that she had not worked since October 11, 1987. She complained that her lower back is always stiff and her wrists, ankles, and knees swell in the morning. She also stated that because of her lower back problem, she now is unable to lift, comb her hair,

cook meals, go grocery shopping, do the laundry, or clean the house. Wren testified that her back pain would prevent her from resuming work as a seamstress, because "when you're sewing you [have] to move your back up and down all the time and I, you know, that's straining pull the muscle in my back, it hurts." She further testified that she takes Tylenol III and Motrin for pain.

4) *Education, age, and work history.* At the October 12, 1988, hearing Wren testified that she was 58 years old. She completed the tenth grade. Moreover, she had eight weeks of training as a seamstress and on-the-job training as a nurse assistant. Her work history included positions as a seamstress/sewing machine operator and a nurse's assistant.

### III.

■■■ Wren contends that there was not substantial evidence to support the Secretary's finding that she was not disabled. Wren has the burden of proving her disability by establishing a physical or mental impairment. *See Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir.1985). If she is not able to provide sufficient medical evidence, the ALJ may make a decision based on the information available. *See* 20 C.F.R. § 404.1516 (1989). A consultative examination may be necessary to develop a full and fair record. *See* 20 C.F.R. § 404.1517 (1989). However, the decision to require such an examination is within the discretion of the ALJ. *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir.1987).

Through step four Wren had the burden of proving her disability. The ALJ found at step four that Wren's impairments do not prevent her from performing her past relevant work as a seamstress. The issue on appeal becomes whether there is substantial evidence to support the Secretary's finding that Wren is not disabled. On review, this Court is "confined to questioning only whether substantial evidence supports the Secretary's judgment." *Hollis v. Bowen,* 837 F.2d 1378, 1384 (5th Cir.1988).

The district court found that the ALJ's determination that Wren was not disabled and could perform her past relevant work as a seamstress was supported by substantial evidence in the record. The ALJ based that decision on the reports of (1) Dr. Britton in which he found that Wren was able to walk without assistance and that objective and neurological examinations were normal; (2) Dr. McIlwain in which he found that Wren has a bulging disc which could cause *intermittent pain;* and (3) Dr. Huddleston in which he found that although Wren suffered from nerve root impingement lending to a deficit in the normal neuromusculo-skeletal functioning, her condition could be managed and improved.

The ALJ did not consider Dr. Britton's February 7, 1989, medical assessment of Wren because it was completed after the ALJ's decision was handed down. However, in denying review, the Appeals Council found that Dr. Britton's medical assessment was not supported by the record evidence because it was made more than six months subsequent to the x-rays of record.

There is further medical evidence in the record to support the Secretary's decision that Wren is not disabled. Dr. Hudson found palpation of Wren's back unremarkable, no apparent localized tenderness, straight leg raising negative, examination of the wrist and legs negative, and prognosis good. Based on evidence from Dr. McIlwain and Dr. Hudson, Dr. Yarbrough determined that Wren's condition was not so severe as to significantly limit her ability to work. Based on evidence from Dr. Britton, Dr. Maxey determined that Wren's condition does not severely limit her ability to work.

■■■ The ALJ must consider subjective evidence of pain, *Scharlow v. Schweiker,* 655 F.2d 645, 648 (5th Cir.1981), but it is within his discretion to determine the pain's disabling nature. *Jones v. Heckler,* 702 F.2d 616, 621–22 (5th Cir.1983). Such determinations are entitled to considerable deference. *James v. Bowen,* 793 F.2d 702, 706 (5th Cir.1986). Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment. *Hay-*

*wood v. Sullivan,* 888 F.2d 1463, 1470 (5th Cir.1989).

The ALJ considered Wren's subjective complaints of pain as evidenced by his written decision. He concluded that "[t]he extent of the claimant's subjective complaints of pain, weakness, limitation of motion and other subjective symptomatology has not been borne out by the credible medical findings of record."

■ Wren also contends that she should have been granted disability benefits by the application of the Secretary's Medical–Vocational Guidelines. Her argument is inapposite because the Medical–Vocational Guidelines apply only when the ALJ reaches step five and finds that the claimant is unable to perform claimant's past relevant work. *See Fraga v. Bowen,* 810 F.2d 1296, 1304 (5th Cir.1987) (once ALJ finds claimant unable to perform his past relevant work, ALJ may rely on the Medical–Vocational Guidelines to determine whether other work is available in national economy that claimant can perform). In the present case, the ALJ determined at step four that Wren was not disabled and could perform her past relevant work as a seamstress.

The ALJ considered Wren's subjective complaints of pain as evinced in the record. Moreover, there was sufficient medical evidence in the record to support the Secretary's decision that Wren was not disabled and could return to her past relevant work as a seamstress. Because we find that the Secretary's decision is reasonable and is supported by substantial evidence, the decision of the district court is

AFFIRMED.