United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 20, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

06-50420
Summary Calendar
_____

JOETTA WILSON,

                                        Plaintiff-Appellant,

                    v.

JO ANNE B BARNHART,
Commissioner of Social Security,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for the
Western District of Texas, Austin
No. 1:05-CV-23
_____

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    Joetta Wilson, a social security claimant, appeals the

district court's decision to affirm the administrative law judge's

finding that she was not under a disability.  We affirm.

    I.  BACKGROUND

    In 2001, Wilson filed an application for supplemental security

income (SSI) under Title XVI of the Social Security Act, 42 U.S.C.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 401, *et seq.*, alleging that her inability to work began on October 1, 2001. The Commissioner found that Wilson was not disabled. After the Commissioner denied her request for reconsideration, Wilson requested a hearing before an administrative law judge (ALJ).

After a hearing, the ALJ found that Wilson had not engaged in substantial gainful activity since the alleged onset of disability. The ALJ concluded that Wilson's conditions, including diabetes and moderate degenerative joint disease, did not "meet or medically equal one of the listed impairments" in the regulations. The ALJ found that Wilson had the residual functional capacity to perform a significant range of light work. The ALJ therefore found that Wilson was not disabled and denied the disability benefits.

After exhausting her administrative remedies, Wilson sought review in federal district court under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). A magistrate judge recommended affirming the Commissioner's decision, and the district court accepted the recommendation and entered judgment accordingly. Wilson appeals.

II. STANDARD OF REVIEW

We review a denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*,

209 F.3d 448, 452 (5th Cir. 2000).  A final decision is supported by substantial evidence if we find relevant evidence sufficient to establish that a reasonable mind could reach the same conclusion reached by the Commissioner.  *See id*.  In our review of the evidence, we do not substitute our judgment for the Commissioner's judgment.  *See id*.  If there are conflicts in the evidence, we accept the Commissioner's resolution of those conflicts so long as that resolution is supported by substantial evidence.  *See id*.

III. ANALYSIS

Wilson argues that substantial evidence does not support the ALJ's decision finding that she was not disabled as defined in the Social Security Act.  The ALJ uses a sequential five-step inquiry to evaluate disability claims:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

More specifically, Wilson contends that substantial evidence does not support the finding made pursuant to step five—that she had the residual functional capacity to perform the work of a ticket taker, an office helper and a cashier II.  She argues that the ALJ erred in ignoring the "serious issue of the literacy level

3

and cognitive functioning of Ms. Wilson based on her ability to complete the questions sent to her." Wilson did not allege a mental impairment in her application for disability or at the hearing. Even assuming *arguendo* Wilson's responses to the questionnaire somehow demonstrated a limitation in Wilson's cognitive functioning, Wilson has not shown how the alleged limitation affects her ability to perform the particular jobs the ALJ found she could perform. *See id.* at 464.

Wilson next contends that the ALJ erred by ignoring evidence that she suffered from depression. Wilson did not assert that she was depressed in her application or at the hearing.[1] The only evidence of depression she cites is one page out of the hundreds of pages of medical records in which her physician indicates "possible depression." Under these circumstances, the ALJ did not err in failing to consider a possible mental impairment. *Cf. Domingue v. Barnhart,* 388 F.3d 462, 463 (5th Cir. 2004) (finding no error when claimant did not raise depression as an impairment at the administrative level and on appeal "pointed to no evidence indicating that her alleged depression affected her ability to work").

Wilson also argues that the ALJ's conclusion that she could perform a significant range of light work is not consistent with

---

[1] Subsequent to the hearing, Wilson's attorney did suggest a psychological evaluation to exclude malingering or a somatoform disorder. However, there was no allegation of depression.

4

the medical evidence. Wilson further contends that the ALJ did not address these conditions. Contrary to Wilson's assertions, the ALJ expressly considered her conditions. For example, the ALJ explained that "[d]espite her complaints of disability due to diabetes mellitus, hypertension, and pain in her arm and leg, the medical evidence demonstrates that with proper treatment, medication compliance, and adherence to the physicians' instructions, the claimant's conditions improved." The ALJ then cited examples gleaned from Wilson's medical records. The ALJ thoroughly discussed Wilson's medical history, including the opinions of Dr. Tran, Dr. Ramos, Dr. Buck, and Dr. Welch. Ultimately, the ALJ concluded that although Wilson's conditions "could be expected to cause some limitations, the claimant's allegations of disabling conditions are out of proportion to the record as a whole and cannot be given great evidential weight." There is substantial evidence to support this determination, and we thus affirm it.

Wilson further argues that the ALJ failed to properly evaluate her credibility. We disagree. The ALJ adequately considered Wilson's symptoms and claimed limitations, and properly analyzed the findings in light of her allegations and the medical evidence.

Wilson also argues that the ALJ erred in failing to make a specific affirmative finding that she had the ability to work on a sustained basis. An ALJ is not required to make "an explicit finding in every case that the claimant cannot only engage in

5

substantial gainful activity but maintain that employment as well."

*Dunbar v. Barnhart,* 330 F.3d 670, 672 (5th Cir. 2003).[2]  Here, the record demonstrates that the ALJ took into consideration whether Wilson could maintain employment in determining residual functional capacity.  The ALJ specifically questioned the vocational expert regarding the maximum amount of absenteeism an employer would tolerate "or they're not going to be able to maintain it."  Wilson has failed to provide evidence that required the ALJ to make a separate finding regarding her ability to maintain employment.  *See Frank v. Barnhart,* 326 F.3d 618, 619-20 (5th Cir. 2003).

In sum, Wilson has failed to demonstrate either that improper standards were used to evaluate the evidence or that the final decision was not supported by substantial evidence.  The district court's judgment is AFFIRMED.

---

[2]  As in *Dunbar*, the ALJ found in the instant case, after hearing the testimony of a vocational expert, that the claimant "was capable of making a successful adjustment to work that exists in significant numbers in the national economy."

6